ANDREW MAGNO FREIRE (CA SBN 352506)
Immigrant Defenders Law Center
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
afreire@immdef.org
Telephone: (213) 348-5063
Facsimile: (213) 282-3133

*Pro Bono Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| John Doe,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center; ERNESTO SANTACRUZ, Jr. Field Office Director of ICE ERO Los Angeles; DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No.<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**FILED UNDER SEAL PURSUENT TO L.R. 79-5.2.1(a)(ii)**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

**INTRODUCTION**

1. Petitioner John Doe[1], ("Petitioner") seeks immediate release from Respondents' custody, pursuant to statutory, regulatory, and due process protections in connection with his re-detention without notice or an opportunity to contest his detention.

2. Petitioner has lived in the U.S. for nearly his whole life, and in his early twenties, he was diagnosed with a severe mental illness. Exh. A (Petitioner's Declaration) at ¶¶ 2-3. Petitioner was born in Mexico in 1978 but was brought to the U.S. when he was less than a year old. *Id* at ¶ 2. Sometime after arriving in the U.S., he and his family obtained legal permanent resident status. *Id*. Petitioner attended school while living in the U.S. and was placed in special education classes. *Id*. In the early 2000's, Petitioner began experiencing symptoms of a severe mental illness, including aural hallucinations, voices and sensing the presence of others even when there was no one there, and talking to himself in response to his hallucinations. *Id*. at ¶ 3. Subsequently, Petitioner was diagnosed with severe Major Depressive Disorder with Psychotic features, and he has a history of psychiatric hospitalization. *Id*; *see* Exh. H (Petitioner's Motion for Safeguards) at 22-24.

3. Petitioner lived in the U.S. until the end of 2011, when he was deported to Mexico. Exh. A at ¶ 4. In 2013, Petitioner fled from Mexico because Mexican police officers continually targeted him for his mental health, severely beat him and threatened to kill him while he lived in Mexico for almost two years. *Id*. Petitioner was also beaten and raped by staff members at a private rehabilitation center in Mexico. *Id*. Because the Mexican authorities were unwilling to prosecute those who abuse patients at these institutions, Petitioner returned to the U.S. *Id*.

4. In 2014, Petitioner was issued a Noice to Appear for Removal Proceedings and detained at Adelanto Processing Center. *See Id*. at ¶ 5. In November 2014, Petitioner was released from immigration custody on bond and was ordered to enroll in Mental Health

[1] "John Doe" is a pseudonym. Because this matter will require filing of documents related to Petitioner's asylum claim, previous immigration removal proceedings, and mental health history, he requests leave to proceed under pseudonym. Petitioner is concurrently filing an Application to File under Seal.

America's Full Service Partnership. *Id*. Petitioner was subsequently arrested on a probation violation and sentenced to time in county jail. *Id*. ICE detained Petitioner upon his release from county jail, and he completed his immigration case while detained. *Id.*

5. Although Petitioner had been previously detained in the custody of the Department of Homeland Security ("DHS") during the pendency of his removal proceedings, he was released soon after an immigration judge's ("IJ") grant of Withholding of Removal ("WOR" or "Withholding") on November 28, 2018. *See* Exh. F (Immigration Judge's Order Granting Withholding of Removal) at 18. This protection forbids the government from removing him to Mexico based on the IJ's finding that there is a clear probability that he would be persecuted in that country. *See Id*. After his release, Petitioner attended scheduled appointments with the U.S. Immigration and Customs enforcement ("ICE") until an immigration officer suspended his appointments until further notice. *See* Exh. A at ¶ 6.

6. On April 8, 2026, Petitioner was released on his own recognizance from the Orange County jail in Santa Ana California, where he was held for a pending charge for possession of a controlled substance. Exh. A at ¶ 7. Petitioner has not been convicted of the allegation that led to his detention in the Orange County jail. *Id*. Upon his release, ICE re-arrested and re-detained Petitioner. Exh. E (Department of Homeland Security's Immigration Detainer Notice of Action and Warrant of Removal) at 12-17. While arresting Petitioner, ICE agents alluded to the IJ's 2018 order of removal as a basis for his re-detention. Exh. A at ¶ 7; *see* Exh. E at 12. However, prior to his re-detention, Petitioner was not provided with an opportunity to contest the detention. *See* Exh. A at ¶¶ 7-8. Respondent's Immigration Detainer references the Laken Riley Act, although it is unclear why this law is mentioned in the detainer because it is inapplicable to Petitioner. Exh. E at 12. *See* 8 U.S.C.A. § 1226(c)(1)(ii). Petitioner is now detained at the Adelanto Processing Center West, in Adelanto California. Exh. A at ¶ 1.

7. Respondents have attempted to coerce Petitioner to accept a third country of removal and have almost deported him to Mexico in blatant violation of the IJ's order granting withholding. Exh. A at ¶¶ 8-9; *see* Exh. F at 18. ICE agents pressured Petitioner to select a third country, like El Salvador, Honduras, or Guatemala, for removal. Exh. A at ¶ 8. Additionally,

Respondents took steps to seek Petitioner's removal to Mexico, which is prohibited under the IJ's order. *Id* at ¶ 9. Respondents' actions have negatively impacted Petitioner's mental health. *Id.*

8. Petitioner suffers from symptoms from major depressive disorder, schizoaffective disorder bipolar type, and post-traumatic stress disorder, that impact his ability to care for himself independently. *See Id.* at ¶¶ 3, 11-13; Exh. B (Letter and Mental Health Diagnosis from OC Opportunity Knocks) at 6-7; *see* Exh H at 22-23. His continued placement with Opportunity Knocks will provide him with the wholistic support he needs. *See* Exh. A at ¶¶ 12-14; *see* Exh. B at 6. Petitioner needs ongoing treatment to target mood and residual psychotic symptoms to process the traumatic events he experienced in his life. *See Id.* at ¶¶ 11-12.

9. Since being granted withholding of removal in 2018, Petitioner has exercised his right to liberty. Petitioner complied with the conditions of his release. *See* Exh. A at ¶ 6. He continues to lawfully reside and work in the U.S. *See* Exh. A at ¶ 15; *See* Exh. C (Letter from Employer Matt Lovsto) at 8. Prior to his arrest, Petitioner enrolled in a full-service partnership mental health program through Opportunity Knocks. Exh. B at 6. Since November 2024, Petitioner has attended support groups, and met with his case manager, therapist and psychiatrist. *See Id.*; *see* Exh. A at ¶¶ 13-14. Petitioner also worked in food services, managing sales and cooking. Exh. C at 8; Exh. A at ¶ 15.

10. Petitioner asks this Court to find that Respondents' re-detention violated Petitioner's Fifth Amendment Due Process rights, the statutes and regulations governing the detention of noncitizens with final removal orders, and thus, order (1) his immediate release from civil immigration detention under the same conditions of his prior release; and (2) prevent the Respondents from re-detaining him without first providing him with a constitutionally adequate hearing before a neutral adjudicator where the government bears the burden to demonstrate by clear and convincing evidence that his custody is justified by materially changed circumstances.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, since this Petition arises under the Constitution and laws of the United States, namely the detention

provisions of the Immigration and Nationality Act, 8 U.S.C. § 1231; the habeas corpus statute, 28 U.S.C. § 2241; and the Due Process Clause of the Fifth Amendment.

12. This Court may grant relief pursuant to the Habeas Corpus Act, 28 U.S.C. § 2241, et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers. See *Hilton v. Braunskill*, 481 U.S. 775 (1987).

13. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

14. Venue is proper in this District because this is the district in which Petitioner is confined. *See Doe v. Garland*, 109 F.4th 1188, 1197–99 (9th Cir. 2024). Petitioner is currently detained at the Adelanto ICE Processing Center in Adelanto, California, which is within the jurisdiction of this District.

15. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to his claims occurred in this District and no real property is involved in this action. 28 U.S.C. § 1391(e).

**<u>REQUIREMENTS OF 28 U.S.C. § 2243</u>**

16. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require respondents to file a return "*within three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

17. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does *a swift and imperative remedy* in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added)

//

//

## PARTIES

18. Petitioner John Doe is a 48-year-old man and citizen of Mexico, who had been at liberty pursuant to an IJ's grant of Withholding in November 2018, until his re-arrest in April 2026. Exh. A ¶¶ 1, 7. Petitioner is no longer in removal proceedings pursuant to the IJ's grant of withholding in November 2018. *See Id*. at ¶ 5. Petitioner is now in the custody, and under the direct control of, Respondents and their agents. *Id*. at ¶¶ 1, 7.

19. Respondent Fereti Semaia is the Warden of Adelanto ICE Processing Center, the immigration detention facility where Petitioner is detained. Respondent Semaia is sued in his official capacity.

20. Respondent Ernesto Santacruz Jr. is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations ("ERO") division. In that capacity, Defendant Santacruz Jr. is responsible for the supervision of personnel within ERO in the geographic area covered by the Los Angeles Field Office and is therefore the custodian of all persons held at ICE facilities under that jurisdiction. He is a custodian of Petitioner and is responsible for Petitioner's detention. Respondent Santacruz Jr. is sued in his official capacity.

21. Respondent David Venturella is the Acting Director of ICE, a component agency of DHS. ICE is responsible for enforcing the immigration laws, including the detention of alleged noncitizens in removal proceedings, which the agency chooses to accomplish through imprisonment and removal of noncitizens with final removal orders. Respondent Venturella is a legal custodian of Petitioner with legal authority to produce and release him. Respondent Venturella is sued in his official capacity.

22. Respondent Markwayne Mullin is the Secretary of DHS. He is responsible for overseeing DHS and its sub-agency, ICE, and has ultimate authority over detention of noncitizens in civil immigration custody. Respondent Mullin is a legal custodian of Petitioner and is sued in his official capacity.

23. Respondent Todd Blanche is the Acting Attorney General of the United States, responsible for overseeing the Department of Justice (DOJ), which houses the immigration

courts and the Executive Office for Immigration Review (EOIR). He is sued in his official capacity.

**STATEMENT OF FACTS**

24. Petitioner is a citizen of Mexico. Exh. A at ¶ 1. He is not a citizen of any country besides Mexico, nor does he have ties to any other country other than the United States. *Id.*

25. Petitioner was brought to the United States in 1978, when he was less than a year old. *Id.* at ¶ 2. In his early twenties, Petitioner was first diagnosed with severe Major Depressive Disorder with Psychotic features. *Id.* at ¶ 3; *see* Exh. H at 22-24. In 2024, he was subsequently diagnosed with schizoaffective disorder bipolar type, acute post-traumatic stress disorder and alcohol abuse disorder. Exh. B at 7.

26. Petitioner was first placed in removal proceedings in 2011 and was ordered removed to Mexico in 2012. Exh. A at ¶ 4. He re-entered the U.S. because he feared for his life. *See Id.* The DHS detained and initiated removal proceedings against him, and Petitioner applied for Asylum and Withholding because during his time in Mexico he was subject to past persecution and torture at the hands of Mexican police and health care workers. *See Id.* He was beaten on multiple occasions by police and raped by staff members at a rehabilitation center. *Id.*

27. In September 2014, an IJ found Petitioner to be a *Franco-Gonzalez v. Holder* class member, as he was deemed to have a serious mental disorder or defect that renders him incompetent to represent himself in removal proceedings. Exh. I (Immigration Judge's Order Prescribing Safeguard of a Qualified Representative) at 25. As such, he was appointed an attorney Qualified Representative (QR) to represent him in his immigration proceedings and granted safeguards during his removal proceedings, including that the IJ take his mental incapacity into account when considering his credibility. *Id.*; Exh. H at 23-24; Exh. G (Immigration Judge's Order Granting Motion for Safeguards) at 20.

28. On November 28, 2018, an IJ granted Petitioner withholding of removal to Mexico under the Immigration and Nationality Act (INA). Exh. F at 18-19. DHS did not designate an alternate country of removal. *Id* at 18.

29. Since Petitioner was granted withholding, he has continued to live and work in the United States, and reported regularly to ICE. *See* Exh. A at ¶ 6. During the 2020 COVID-19 pandemic, an immigration officer postponed his routine check-in until further notice. *Id*. Petitioner has since remained free without any ICE reporting requirements for six years. *See Id*.

30. On April 8, 2026, Petitioner was re-detained by ICE without a process to contest his re-detention. *See Id.* at ¶ 7. ICE arrested Petitioner upon his release on recognizance from the Orange County jail in Santa Ana California, where he was held for a pending controlled substance charge. *Id*. At the time of his re-detention, ICE announced to Petitioner that he is subject to detention because of a prior final order of removal. *Id*.; *see* Exh. E at 12. At the time Petitioner was re-detained by ICE, he had not been convicted of the allegation that led to his detention in the Orange County jail. Exh. A at ¶ 7.

31. Once Petitioner was re-detained, ICE tried to quickly remove him to another country when they presented him with self-deportation documents before speaking with his qualified representative or attorney. *See Id*. at ¶ 8. While he was detained at the basement floor of the Los Angeles Federal Building, ICE officials told him that he has a final order of removal and presented him documents to sign for self-departure to Honduras, El Salvador or Guatemala. *Id*. Petitioner declined to sign the documents and he asked ICE officers to allow him to speak to his attorney, because he did not understand why ICE was presenting him self-deportation documents and he was terrified to be sent to a country where he would be targeted and harmed because of his mental illness. *Id*.; *see also* Exh. E at 17. Petitioner is not a citizen of and has no connection to the countries that ICE suggested for his voluntary removal without any hearings or safeguards that he would merit as a *Franco-Gonzalez* class member. Exh. A at ¶ 7; *see* Exh. J at 35; *see* Exh. G at 25.

32. After re-detaining Petitioner at Adelanto Processing Center, ICE nearly deported him to Mexico. Exh. A at ¶ 9. On the last week of April, ICE ordered Petitioner to step out of his cell to be transported to Mexico by bus. *See Id*. They made him gather his belongings and change out of his detention clothing. *Id*. After processing him for removal, ICE suddenly returned Petitioner to his cell. *Id*. Because of ICE's conduct, Petitioner believed his removal to Mexico

was certain and that he would suffer persecution again, despite the IJ's grant of withholding protections. *Id*.; *see* Exh. F at 18.

33. Since Petitioner has been re-detained, Respondents issued him a "Notice to Alien of File Custody Review," explaining that his "custody status will be review on or about 6/29/2026." Exh. D (Department of Homeland Security's Notice to Alien of File Custody Review) at 9. To cooperate with the Respondent's review, Petitioner provided his deportation officer with documents pertaining to his mental health, equities and support upon his release. *See* Exh. A at ¶ 10. However, Respondents did not conduct any custody review for consideration of release on or about June 29, 2026. *Id*. Rather, around July 24, 2026, Respondents issued Petitioner a letter explaining ICE's decision to maintain his custody. *Id*. The letter relies on a criminal history that pre-dates Petitioner's release from ICE custody after he was granted withholding. The letter does not allege any material changes in circumstances since 2018. *See Id*. Additionally, Respondents did not interview Petitioner for their custody review. Exh. A at ¶ 10.

34. Respondents' continued detention of Petitioner negatively impacts his mental illness and prevents him from continuing his mental health treatment program. *Id*. at ¶ 11; *See* Exh. B at 6-7. Petitioner requires medication to address his schizoaffective disorder and posttraumatic stress disorder, however, ICE has opted to substitute medications that are not adequate. *See* Exh. A at ¶ 11. As such, Petitioner's aural hallucinations have persisted, and he is experiencing memory loss. *Id*. Petitioner is currently enrolled in a Full-Service Partnership Mental Health Program through Opportunity Knocks, where he consults a case manager, therapist and psychiatrist to develop healthy coping skills. *Id.* at ¶ 12; *see* Exh. B at 6. Opportunity Knocks is committed to continuing supporting Petitioner by offering medication support, housing and facilitating the completion of his legal obligations. *See* Exh. A at ¶¶ 13-14; *See* Exh. B at 6. In addition to committing to his treatment program, Petitioner seeks to continue working and developing his skills in food services. Exh. A at ¶ 15; *see* Exh. C at 8. Indeed, his former employer hopes to hire him again because of his strong sales performance, outgoing character, and dedication to his work. *see* Exh. C at 8.

35. To the extent that Respondents seek to remove Petitioner to a third country without notice and a hearing, that detention and removal would violate the Constitution, the Immigration and Nationality Act (INA), and the governing regulations. Because Petitioner has a final removal order with withholding to Mexico, and if DHS is seeking to remove him to some other country not previously designated as the country or alternative country of removal, he would be a member of the certified class in *D.V.D v. U.S. Dep't of Homeland Sec.*, where the U.S. District Court for the District of Massachusetts found that the administration's third-country removal policy violates both the INA and the Due Process Clause. Case No. 25-10676-BEM, 2026 WL 521557, at *24-40 (D. Mass. Feb. 25, 2026).

**EXHAUSTION**

36. The habeas statute "'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (quoting *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.2001)).

37. Exhaustion is also not required as a prudential matter. Prudential exhaustion may be required if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). None of these factors weigh in favor of requiring exhaustion.

38. In fact, addressing Petitioner's challenge would not encourage bypassing the administrative proceedings as there is no adequate established process that would provide Petitioner with a constitutionally adequate opportunity to challenge his re-detention.

39. Even if Petitioner had an adequate administrative avenue to pursue, exhausting his constitutional claim would be futile because the Agency does not have the authority to rule on constitutional questions. *See Wang v. Reno*, 81 F.3d 808, 815–16 (9th Cir. 1996) (per curiam) ("[T]he inability of the INS to adjudicate the constitutional claim completely undermines most, if not all, of the purposes underlying exhaustion.").

40. Moreover, requiring administrative exhaustion would cause Petitioner irreparable harm by prolonging his unjustified detention. *See Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (recognizing that habeas petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention") (internal quotation omitted)).

## RELEVANT LEGAL FRAMEWORK

### I. Law and Procedure Governing this Habeas Petition

41. The "historic purposes of the writ" of habeas corpus is "to relieve detention by executive authorities without judicial trial." *Zadvydas v. Davis*, 533 U.S. at 699. A writ under 28 U.S.C. § 2241 may issue if, among other things, a person "is in custody under or by color of the authority of the United States." 8 U.S.C. § 2241(c). A habeas court's role is at its "most extensive in cases of pretrial and noncriminal detention," especially "where there ha[s] been little or no previous judicial review of the cause for detention." *Boumediene v. Bush*, 553 U.S. 723, 780 (2008). A court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. 2243. "The writ, or order to show cause, shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

### II. The Fifth Amendment Protects Noncitizens' Due Process Rights

42. Detention and re-detention under all sections of the INA, including 8 U.S.C. § 1231, must comport with the Fifth Amendment's Due Process Clause, which "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

43. To comport with due process, immigration detention must "bear [a] reasonable relation to the purpose for which the individual [was] committed." *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Detention pursuant to 8 U.S.C. § 1231 –

like other provisions of the INA which authorize civil immigration detention – has "two regulatory goals: ensuring the appearance of [noncitizens at future immigration proceedings and preventing danger to the community" until such proceedings have been completed and the noncitizen has been removed. *Id.* (internal quotation omitted) (citing 8 U.S.C. § 1231(a)(6)). Where the noncitizen cannot be removed, detention to prevent flight risk is minimally justified. *See id.* ("by definition the first justification – preventing flight – is weak or nonexistent where removal seems a remote possibility at best"). And while the "second justification – protecting the community – does not necessarily diminish over time," indefinite detention when removal is not possible, i.e., detention *based solely on the noncitizen's "removable status itself* [,] . . . bears no relation to a detainee's dangerousness." *Id.* at 691–92. (emphasis added)

44. Even individuals detained beyond the 90-day removal period pursuant to § 1231(a)(6) cannot be held indefinitely, pursuant to the Due Process Clause. *See Zadvydas*, 533 U.S. at 690, 697. Rather, post-final order detention is only authorized for a "period reasonably necessary to secure removal." *Id.* at 699–700. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.*; *see* 8 C.F.R. § 241.13(b)(1) (authorizing release after ninety days where removal not reasonably foreseeable).

45. "Adequate, or due, process depends on the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.3d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). Courts must "balance [a noncitizen's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws in order to determine what process is owed, and ensure that ICE does not constitutionally deprive a noncitizen of their liberty. *Id.* at 1357. Under the test set forth in *Mathews v. Eldridge*, district courts consider three factors in conducting this balancing test: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and finally the

government's interest." *Haygood*, 768 F.3d at 1357 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

46. Noncitizens previously released from immigration custody retain a liberty interest in their conditional release pursuant to *Morrissey*. *J.O.L.R. v. Wofford*, No. 25-cv-1241, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025); *see Rodriguez Rodriguez v. Kaiser*, No. 25-cv-1111, 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025); *Maklad v. Murray*, No. 25-cv-946, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091 (E.D. Cal. 2025); *see Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025)("[T]he liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *see Ortega v. Kaiser*, No. 25-cv-05259, 2025 WL1771438, at *3 (N.D. Cal. June 26, 2025)

47. Re-detention of a noncitizen for the mere purpose of investigating whether they may be removed also runs afoul of the Due Process Clause. *See, e.g.*, *Morales v. Chadbourne*, 996 F. Supp.2d 19, 29 (D.R.I. 2014) (McConnell, J.), *aff'd in part* at 793 F.3d 208 (1st Cir. 2015) ("the Fourth Amendment does not permit seizures for mere investigations"); *see also Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. Jul. 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance."). Furthermore, "failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of removal to the country in which they will be removed violates both [DHS] regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute" designation of alternative country without meaningful opportunity to apply for protection "violate[s] basic tenets of constitutional due process"); *see also Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) (same). *See Vaskanyan v. Janecka*, No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208, at *6 (C.D. Cal. June 25, 2025) (holding "third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings").Yet this is precisely what Respondents are doing to remove noncitizens with final removal orders and withholding grants like Petitioner — i.e., detaining

noncitizens for removal to countries not designated for removal during their prior immigration proceedings.

**III. Statutes and Regulations Governing ICE Detention of Noncitizens with Final Removal Orders**

48. The Immigration and Nationality Act ("INA") allows ICE to detain individuals who have final orders of removal for the 90-day "removal period" following the date on which the order of removal became final for the purpose of effectuating removal. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (2)(A).

49. After this 90-day removal period, ICE can continue to detain certain individuals if they pose "a risk to the community" or are "unlikely to comply" with removal. 8 U.S.C. § 1231(a)(6). Otherwise, individuals with final orders of removal who are not removed within the 90-day removal period must be released subject to DHS supervision, as implemented by corresponding regulations. 8 U.S.C. § 1231(a)(3); *see* 8 C.F.R. §§ 241.4; 241.13.

50. Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, subject to an Order of Supervision ("OSUP"). *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025).

51. Noncitizens released under § 241.4(l) can have their release revoked if they violate the conditions of release or if a district director determines that revocation is in the public interest, circumstances do not reasonably permit referral of the case to the ICE Executive Director, and the district director believes (i) the purposes of release have been served; (ii) the noncitizen violated any condition of release; (iii) it is appropriate to enforce a removal order or commence removal proceedings; or (iv) the conduct of the noncitizen or any other circumstance indicates release would no longer be appropriate. 8 C.F.R. § 241.4(l)(1)-(2); *see Ceesay*, 781 F. Supp. 3d at 161.

52. The regulations only permit certain officials to revoke an order of supervision: the ICE Executive Director, a field office director, or an official "delegated the function or authority . . . for a particular geographic district, region, or area." *Ceesay*, 781 F. Supp. 3d at 161. And for a delegated official to have authority to revoke an order of supervision, the delegation order must explicitly say so. *See Id.* (finding a delegation order that "refers only to a limited set of powers

under part 241 that do not include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

53. The regulations require that, upon revocation, the noncitizen be notified of the reasons for revocation, and that they be "afforded an initial information interview promptly" after re-detention, based upon which ICE may decide to release the noncitizen. *Id.*; 8 C.F.R. § 241.4(l)(1), (3).

54. 8 C.F.R. § 241.13 governs release procedures for individuals who "are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a).

55. The procedures under 8 C.F.R. § 241.13 thus attach only upon expiration of the removal period. 8 C.F.R. § 241.13(a). Moreover, it only applies to noncitizens who remain detained, are not otherwise released under the procedures at 8 C.F.R. § 241.4, and for whom removal to the designated country or an alternate country is not likely in the "reasonably foreseeable future." 8 C.F.R. § 241.13(a). *Id*

56. 8 U.S.C. § 1231 is silent on re-detention once released pursuant to the statute. 8 C.F.R. § 241.4(l)(2) permits revocation where there are "[v]iolation(s) of conditions of release," whether an individual was previously released in accordance with 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. Further, 8 C.F.R. § 241.13, which governs release procedures only during a noncitizen's original period of post-removal detention, permits re-detention also where there have been violations of conditions of release or for "revocation for removal," where an ICE officer "… determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

57. When Respondents re-detained Petitioner, they failed to follow these regulations. They have not shown that there is a significant likelihood that Petitioner may be removed in the

reasonably foreseeable future. The regulations implementing 8 U.S.C. § 1231 require that, upon revocation, the noncitizen be notified of the reasons for the revocation of their release. 8 C.F.R. § 241.13(i)(3); 8 C.F.R. § 241.4(l). In addition, ICE "will conduct an initial formal interview promptly after [their] return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for the revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); 8 C.F.R. § 241.4(l). Thus, Respondents violated the procedures mandated under 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13 upon re-detaining Petitioner without notifying him reasons for the revocation of his release (or for removal), and without conducting an interview or an opportunity to respond to the reasons for the revocation.

## ARGUMENTS

### I. Petitioner's Re-Detention Without Notice or a Pre-Deprivation Hearing Violates Procedural Due Process

58. The Due Process Clause of the Constitution makes it unlawful for Respondents to re-arrest Petitioner without adequately justifying the grounds for re-detention nor providing a pre-deprivation hearing before a neutral adjudicator to determine whether there is a significant likelihood that he may be removed in the reasonably foreseeable future, or that circumstances have materially changed since he was granted withholding of removal in November 2018 and released, such that his detention is warranted.

59. Due process requires a hearing for a noncitizen released by DHS under its supervision, like Petitioner, *before* ICE can possibly re-detain him. *Huang v. Albarran*, --- F. Supp. 3d ----, No. 25-CV-01308, 2026 WL 145631, at *8 (E.D. Cal. Jan. 20, 2026) (collecting cases). Generally, "[c]ourts analyze [ ] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, 25-cv-01884, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989))

60. Applying the *Mathews* procedural due process factors, federal district courts have recognized that a pre-deprivation bond hearing is required where "(1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because [the regulations] do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs." *Id*. (citing *J.L.R.P. v. Wofford,* No. 25-CV-01464, 2025 WL 3190589, at *9–10); *see Mathews,* 424 U.S. at 335).

61. Here, Petitioner acquired "a protected liberty interest in remaining out of custody" when he was released from custody after his grant of withholding. *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025); *see Guillermo M. R.*, 791 F. Supp. 3d at 1030 ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Further, Petitioner's liberty interest in remaining out of custody is strengthened by the time he spent out of immigration custody, after his 2018 grant of withholding, building a life for himself in the United States. *See*, e.g., *Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); *see also Garcia v. Andrews*, 2025 WL 1927596, at *4; *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects.")

62. Moreover, Petitioner continued presenting himself before ICE for his regular check-in appointments and he was instructed to no longer appear for this supervision, since 2020. ICE's release of Petitioner reflected a determination that he did not pose a flight risk or danger to the community. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). He thus retains a liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration. *See Young v.*

*Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 788, 781–82 (1973); *Morrissey*, 408 U.S. at 482–83

63. Additionally, Petitioner was released from ICE custody over six years ago, and during this time, he has been building a life for himself with the assistance of mental health providers, and he has made meaningful connections with his community. Since 2024, Petitioner has secured the wholistic mental health services he needs to ensure he can address his severe mental health conditions, live in a safe environment, and work towards his life goals. Additionally, he has developed skills in customer and food service, where he has made positive contributions to local food businesses. He is dedicated to expanding his roles and relationships in the food industry, with support from his former employer and mentor. His detention now denies him that freedom. *See Rodriguez Rodriguez v. Kaiser*, 2025 WL 2545359, at *5; *see also Galindo Arzate v. Andrews*, No. 25-cv-00942, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025). Thus, Petitioner has a profound private interest at stake in this case, which must be weighed heavily when determining what process is owed under the Constitution. *See Mathews*, 424 U.S. at 334–35.

64. Second, "'the risk of erroneous deprivation of liberty is high' where, as here, 'the petitioner has not received any bond or custody redetermination hearing.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *5 (quoting *A.E. v. Andrews*, No. 25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)).

65. Because immigration detention is civil detention, it is "nonpunitive in purpose and effect," and is only justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690. In releasing Petitioner after his grant of withholding, ICE determined that he was neither a flight risk nor a danger to the community. Respondents re-arrested Petitioner without notice or providing him any procedural safeguards to determine whether the circumstances had changed such that his re-detention was justified. *See Galindo Arzate*, 2025 WL 2230521, at *5. Therefore, "[t]he risk of an erroneous deprivation [of liberty] is high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. *Awa v. Noem*, No. 2:26-CV-00922,

2026 WL 943593, at *2 (W.D. Wash. Apr. 8, 2026) (citing *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. July 11, 2025) (cleaned up)).

66. Furthermore, Respondents have not shown any material changed circumstances relating to its ability to remove Petitioner. Petitioner has no connection to any countries other than Mexico and the United States, and Respondents have not given any indication that it has travel documents or the ability to remove him to any other country, to the extent that ICE is relying on its regulations relating to likelihood of future removal as a basis to re-detain, which Petitioner urges are inapplicable to him. *See* 8 C.F.R. § 241.13(i)(2); *Sun v. Noem*, No. 25-cv-02433, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (holding that "vague assertions" about future plans to remove petitioner were "insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'").

67. Rather, Respondents have only presented self-departure options to a third country, and this is insufficient to establish changed circumstances for likelihood of removal where he has a grant of withholding of removal. *see Roble v. Bondi*, No. 25-cv-3196, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (holding mere fact that ICE requested third country removal assistance from ICE headquarters is insufficient to establish changed circumstances for likelihood of removal where petitioner was granted deferral of removal under the Convention Against Torture); *see Hoac v. Becerra*, 2025 WL 1993771, at *4.

68. Additionally, ICE has failed to follow its own procedural regulations for revocation, further increasing the likelihood of erroneous deprivation and itself likely constituting a due process violation. *See Diaz v. Wofford*, No. 25-cv-01079, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025); *Ceesay*, 781 F. Supp. 3d at 166.[2] To date, ICE has not provided

[2] In these cases, courts outside of this district have detailed how violation of the procedures set forth in 8 C.F.R. § 241.4(l) constitute a due process violation. *Diaz*, 2025 WL 2581575, at *7; *Ceesay*, 781 F. Supp. 3d at 166. Petitioner does not contend that the procedures set forth in 8 C.F.R. § 241.4(l), if properly followed, would be sufficient to provide him with due process as required under the Fifth Amendment. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951–52 (9th Cir. 2008), *abrogated on other grounds in part by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zadvydas*, 533 U.S. at 701 (holding that indefinite detention under § 1231(a)(6) raised serious constitutional concerns, in part because "the sole procedural protections available to the [noncitizen] are found in administrative proceedings, where the

an interview to determine whether such revocation was justified. 8 C.F.R. § 241.4(l)(1). Moreover, even if ICE previously released Petitioner in accordance with 8 C.F.R. § 241.13 – which is unlikely because there is no evidence that ICE pursued an alternate county of removal and made a determination that removal was not likely in the reasonably foreseeable future at that time – ICE has not followed its own procedures for revocation on the basis that removal is now foreseeable.

69. Given the absence of any procedural safeguards to determine if Petitioner's re-detention is justified and given the absence of any process to afford him an opportunity to respond to the reasons for revocation before his re-detention, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *Rodriguez Rodriguez*, 2025 WL 254359, at *5 (quoting *A.E.*, 2025 WL 1424382, at *5). This high likelihood of erroneous deprivation counsels heavily in favor of providing Petitioner procedural safeguards.

70. And third, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, this Court has found that "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting *Doe*, 787 F. Supp. 3d at 1094. "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d at 1048 (E.D. Cal. 2025). Here, the "fiscal and administrative burdens" that a pre-deprivation bond hearing would impose is nonexistent in the immigration context. *Mathews*, 424 U.S. at 334–35.; *See Garcia v. Noem*, No. 25CV3759-LL-BLM, 2026 WL 194745, at *3 (S.D.

[noncitizen] bears the burden of proving that his is not dangerous"). However, ICE has failed to meet even this bare minimum of process that it set out in its own regulations, further underscoring the violation of Petitioner's due process rights.

Cal. Jan. 26, 2026). Thus, Providing Petitioner with a hearing before a neutral decisionmaker regarding any re-arrest is a routine procedure that the government provides to those in immigration jails on a daily basis.

71. Here, where the cost of providing a pre-deprivation hearing is extremely low, the government's interest in detaining Petitioner is low and counsels heavily in favor of provision of a bond hearing before detention. Because Respondents failed to provide Petitioner any process before detention, his detention is unlawful and he must be released.

**II. Respondent's Failure to Follow Regulatory Procedures Violates Procedural Due Process**

72. Respondents further violated Petitioner's due process rights by failing to afford him the perfunctory process required under the regulations. 8 C.F.R. § 241.4(i)(3) requires that a noncitizen be "notified of the reasons for revocation" of his order of supervision. It also requires ICE to conduct a *prompt* informal interview where the noncitizen is afforded an opportunity to respond to the reasons for revocation, including by submitting evidence refuting a likelihood of foreseeable removal or violations of the OSUP. *Id*. Although informal, the revocation review requires adequate evaluation of contested facts. *Id*. These procedures were promulgated "to protect a fundamental right derived from the Constitution." *Nguyen v. Hyde,* 788 F. Supp. 3d 144, 152 (D. Mass. 2025).

73. Similarly, 8 C.F.R. § 241.13(f) requires ICE to demonstrate "changed circumstances showing a significant likelihood that Petitioner will be removed" based on their ongoing efforts and "'reasonably foreseeable results of those efforts,'" for revocation. *Huang*, 2026 WL 145631, at *5 (quoting 8 C.F.R. § 241.13(f)).

74. Respondents have failed to comply with these requirements. To date, Respondents have not provided Petitioner a prompt informal interview where he is afforded an opportunity to respond to the reasons for revocation, or asserted changed circumstances showing a significant likelihood that he will be removed. Indeed, Respondents have failed to provide Petitioner any information about their efforts to remove him to any country or the likelihood of success of those efforts. Even if Respondents could provide evidence of their efforts to remove him to another

country other than Mexico, they cannot prove that it is reasonably foreseeable that those efforts will result in his removal. To the extent that Respondents seek to remove him to a third country, Petitioner must be afforded a reasonable fear interview upon expressing a fear of persecution and torture in such country. *See* 8 C.F.R. § 208.31; 8 C.F.R. § 1208.31. If Petitioner establishes a reasonable fear, he must be referred to an immigration judge for withholding of removal proceedings. *Id.* Even if an asylum officer finds that Petitioner did not establish a reasonable fear of persecution or torture, he can request a review of the reasonable fear decision by an IJ.

75. Respondent's "failure to follow its own procedural regulations constitutes a due process violation." *Huang*, 2026 WL 145631, at *7 (published decision); *J.L.R.P.*, 2025 WL 3190589, at *7.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process

76. Petitioner re-alleges and incorporate the preceding paragraphs.

77. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, property, *without due process of law*." U.S. CONST. AMEND. V (emphasis added). Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

78. Respondents previously detained Petitioner and released him after an IJ granted him withholding of removal and provided individualized custody determination that considered any danger or unmitigable flight risk. He has a liberty interest in remaining free from physical confinement on conditional release under the Due Process Clause. *See Morrissey*, 408 U.S. at 482–83. Due Process does not permit the government to strip him of that liberty without a hearing before this Court. *See id.* at 487–88.

79. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted

justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990.

80. In the immigration context, for such hearings to comply with due process, the government bears the burden to demonstrate material change in circumstances as to a noncitizen's danger to the community or flight risk. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. Nov. 22, 2019) ("“[W]here a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance.") (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)). "In practice, the DHS re-arrests individuals only after a '*material*' change in circumstances'" as to dangerousness or flight risk. *Rios v. Noem*, No. 25-cv-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) (quoting *Ortega*, 415 F. Supp. 3d at 968); *see also Y.M.M. v. Wamsely*, No. 25-cv-02075 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021))

81. Petitioner's re-detention without a pre-deprivation hearing violated due process. Nearly six years after deciding to release Petitioner from custody, Respondents re-detained him without demonstrating material changes in circumstances to justify his re-detention, and without any opportunity to contest his re-detention.

82. Petitioner has a significant personal interest in his liberty. Because he received no procedural protections, the risk of erroneous deprivation is high, and the government has no legitimate interest in detaining him without a pre-deprivation hearing. A hearing before a neutral decisionmaker to determine whether there is a material change in circumstances that Petitioner is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely provides this sort of review to individuals in Petitioner's circumstances. 8 C.F.R. § 241.4(e)–(f).

83. For these reasons, Respondents have violated the Due Process Clause of the Fifth Amendment. The Court should order that Respondents immediately release Petitioner.

//

//

**COUNT TWO**

**Violation of 8 U.S.C. § 1231(a)(3)**

84. Petitioner re-alleges and incorporate the preceding paragraphs.

85. The INA requires mandatory detention of individuals with final removal orders only during the 90-day removal period. 8 U.S.C. § 1231(a)(2).

86. A noncitizen who is not removed within that period "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

87. No statute permits Respondents to re-detain an individual who has been released under § 1231(a)(3) without evidence that removal is now reasonably foreseeable or that the individual has violated the conditions of their release.

88. Petitioner's final order of removal issued well over 90 days ago. Indeed, it was issued on November 28, 2018. Thus, Petitioner is outside the 90-day removal period and cannot be detained for that reason alone.

89. The regulations implementing 8 U.S.C. § 1231, at 8 C.F.R. § 241.13(i)(2), provide for revocation "for removal" and allow revocation of release when "on account of changed circumstances, the [government] determines that there is a significant likelihood" that a noncitizen may be removed "in the reasonably foreseeable future." The regulation at 8 C.F.R. § 241.4(l) authorizes the revocation of release only where there has been a violation of the conditions of release or there has been a determination that "i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."

90. No such determination of material changed circumstances was made prior to Petitioner's re-detention and Respondents have not followed its own procedures for revocation on the basis that removal is now foreseeable.

91. By failing to show material changed circumstances specific to Petitioner to justify his re-detention, and by failing to provide him with sufficient notice for the reasons for the

revocation of his release or an opportunity to contest those reasons with counsel present, Respondents violate 8 U.S.C. § 1231(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

1. Assume jurisdiction over this matter;
2. Grant the petition for writ of habeas corpus or issue an order to show cause to the Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If this Court issues an order to show cause, it must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added);
3. Declare that Petitioner's re-detention without a hearing before a neutral adjudicator where the government bore the burden to show changed circumstances violated the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(3);
4. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately under the same terms as his prior release;
5. Enjoin Respondents from removing Petitioner outside of this judicial district throughout the pendency of these proceedings, away from pro bono counsel;
6. Enjoin Respondents from re-detaining Petitioner without providing at least seven (7) days' notice, and unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that there is a material change in circumstances such as to justify his re-detention;
7. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and
8. Grant any further relief this Court deems just and proper.

Dated: August 17, 2026

Respectfully Submitted,

*/s/ Andrew Magno Freire*
Andrew Magno Freire
Immigrant Defenders Law Center
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Email:*afreire@immdef.org*
Telephone: (213) 348-5063
Facsimile: (213) 282-3133

*Pro bono* Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, John Doe, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 17th day of August, 2026.

Date: August 17, 2026

Respectfully Submitted,
*/s/ Andrew Magno Freire*
Andrew Magno Freire
*Pro bono Attorney for Petitioner*