**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | Case No. 5:26-cv-04669-MBK<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT OF HABEAS CORPUS |

Petitioner John Doe is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Petitioner entered the United States with his family when he was less than a year old. He spent his entire childhood in the United States and was diagnosed with severe mental health conditions as a young adult. In 2011, Petitioner was removed to Mexico, where he was targeted by the police because of his mental health conditions and abused at a mental health rehabilitation facility. Petitioner subsequently fled to the United States and sought asylum.

In 2014, an Immigration Judge ("IJ") released Petitioner on bond and ordered him to enroll in a mental health treatment program. Since his release,

Petitioner duly enrolled in mental health treatment and has otherwise complied with the terms of his release. On April 8, 2026, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner without notice or an opportunity to be heard.

In this habeas action, Petitioner alleges that his re-detention violates due process. When Respondents failed to file a timely response to the Petition, the Court issued an Order to Show Cause why the Petition should not be granted as unopposed. Dkt. 12. The Court gave Respondents an additional opportunity to file an Answer by August 31, 2026. *Id.* As of the date and time of this Order, the Court is not in receipt of Respondents' Answer. In light of Respondents' non-opposition, the Court grants the Petition and orders Petitioner's immediate release.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner John Doe is a native and citizen of Mexico. Dkt. 5 at 2. He was born in Mexico in 1978 and was brought to the United States by his family when he was less than a year old. *Id.* At some point after arriving in the United States, Petitioner's family obtained legal permanent resident status. *Id.* Petitioner attended school while living in the United States and was placed in special education classes. *Id.*

In his early twenties, Petitioner was first diagnosed with severe Major Depressive Disorder with Psychotic features. *Id* at 7; Dkt. 2-2 at 33-35. In 2024, he was subsequently diagnosed with schizoaffective disorder bipolar type, acute post-traumatic stress disorder, and alcohol abuse disorder. Dkt. 5

at 7; Dkt. 2-2 at 11. He has a history of psychiatric hospitalizations. Dkt. 2-2 at 33-35.

Petitioner lived in the United States until the end of 2011, when he was deported to Mexico. Dkt. 5 at 2; Dkt. 2-2 at 6. In 2013, Petitioner fled from Mexico because Mexican police officers continually targeted him for his mental health, severely beat him, and threated to kill him. Dkt. 5 at 2. Petitioner was also beaten and raped by staff members at a private rehabilitation center in Mexico. *Id.* Because the Mexican government was unwilling to prosecute those who abuse patients at mental health institutions, Petitioner returned to the United States in fear for his life. *Id.* at 2, 7.

In 2014, Petitioner was issued a Notice to Appear for removal proceedings and detained at the Adelanto Detention Center. *Id.* at 7. Shortly thereafter, Petitioner applied for Asylum and Withholding of Removal due to the persecution and torture he suffered at the hands of the Mexican police and health care workers. *Id.*

In September 2014, an Immigration Judge ("IJ") found Petitioner to be a *Franco-Gonzalez v. Holder* class member, as he was deemed to have a serious mental disorder or defect that renders him incompetent to represent himself in removal proceedings. *Id.*; Dkt. 2-2 at 37. As such, he was appointed a Qualified Representative ("QR") to represent him in his immigration proceedings and granted certain safeguards, including that the IJ take his mental incapacity into account when considering his credibility. *Id.* In November 2014, Petitioner was released from detention on bond and was ordered to enroll in Mental Health America's Full Service Partnership. Dkt. 2 at 2-3. Petitioner enrolled in a mental health services program with

"Opportunity Knocks" and has complied with the terms of his release. *Id.*; Dkt. 2-2 at 11.

On November 28, 2018, an IJ granted Petitioner withholding of removal to Mexico under the Immigration and Nationality Act. Dkt. 5 at 7; Dkt. 2-2 at 27-28. Since Petitioner was granted withholding, he has continued to live and work in the United States, and reported regularly to ICE. Dkt. 5 at 8. During the 2020 COVID-19 pandemic, ICE postponed Petitioner's routine check-ins until further notice. *Id.* Petitioner has since remained free without any ICE reporting requirements for six years. *Id.*

On April 8, 2026, Petitioner was re-detained by ICE upon his release on recognizance from the Orange County Jail in Santa Ana, California, where he was held for a pending charge for possession of a controlled substance. *Id.* Petitioner had not been convicted of the allegation that led to his detention in Orange County at the time he was re-detained by ICE. *Id.* While arresting Petitioner, ICE agents alluded to the IJ's 2018 order of removal as a basis for his re-detention. *Id.*

While in detention, ICE attempted to quickly remove Petitioner to a third country when they presented him with self-deportation documents before he had an opportunity to speak with his QR or attorney. *Id.* While he was detained at the basement floor of the Los Angeles Federal Building, ICE officials told him that he has a final order of removal and presented him documents to sign for self-departure to Honduras, El Salvador, or Guatemala. *Id.* Petitioner declined to sign the documents and he asked ICE officers to allow him to speak to his attorney, because he did not understand why ICE was presenting him self-deportation documents and he was terrified to be sent to a country where he would be targeted and harmed because of his mental illness. *Id.* Petitioner is not a citizen of and has no connection to the countries

that ICE suggested for his voluntary removal. *Id.* On the last week of April 2026, ICE ordered Petitioner to step out of his cell to be transported to Mexico by bus. *Id.* They made him gather his belongings and change out of his detention clothing. *Id.* After processing him for removal, ICE suddenly returned Petitioner to his cell. *Id.* Because of ICE's conduct, Petitioner believed his removal to Mexico was certain and that he would suffer persecution again, despite the IJ's grant of withholding protection. *Id.* at 8-9.

Since Petitioner has been re-detained, Respondents issued him a "Notice to Alien of File Custody Review," explaining that his "custody status will be review on or about 6/29/2026." *Id.* at 9 (quoting Dkt. 2-2 at 16). To cooperate with the Respondent's review, Petitioner provided his deportation officer with documents pertaining to his mental health, equities, and support upon his release. *Id.* However, Respondents did not conduct any custody review for consideration of release on or about June 29, 2026. *Id.* Rather, around July 24, 2026, Respondents issued Petitioner a letter explaining ICE's decision to maintain his custody. Dkt. 2-2 at 17-18. The letter relies on a criminal history that pre-dates Petitioner's release from ICE custody after he was granted withholding. *Id.* The letter does not allege any material changes in circumstances since 2018. *Id.* Additionally, Respondents did not interview Petitioner for their custody review. Dkt. 5 at 9.

Respondents' continued detention of Petitioner negatively impacts his mental illness and prevents him from continuing his mental health treatment program. *Id.*; Dkt. 2-2 at 11 (letter from Petitioner's case manager at Opportunity Knocks). Petitioner requires medication to address his schizoaffective disorder and posttraumatic stress disorder. However, ICE has substituted medications that are not adequate to treat his conditions. Dkt. 5 at 9. As such, Petitioner's aural hallucinations have persisted, and he is

experiencing memory loss. *Id*. Petitioner is currently enrolled in a Full-Service Partnership Mental Health Program through Opportunity Knocks, where he consults a case manager, therapist, and psychiatrist to develop healthy coping skills. *Id*.; Dkt. 2-2 at 11. Opportunity Knocks is committed to continue supporting Petitioner by offering medication support, housing and facilitating the completion of his legal obligations. *Id*. In addition to committing to his treatment program, Petitioner seeks to continue working and developing his skills in food services Dkt. 5 at 9. His former employer hopes to hire him again because of his strong sales performance, outgoing character, and dedication to his work. Dkt. 2-2 at 14 (letter from employer).

Petitioner filed the instant Petition and a request to proceed under a pseudonym on August 17, 2026. Dkt, 2, 5. He alleges that his re-detention without notice or a pre-deprivation hearing, and Respondents' failure to follow regulatory procedures, violates procedural due process. Dkt. 5 at 16-25. Petitioner also argues that, to the extent that Respondents are trying to remove him to a third country without notice and a hearing, Petitioner would be a member of the certified class in *D.V.D v. U.S. Dep't of Homeland Sec*., No. 25-10676-BEM, 2026 WL 521557, at *24-40 (D. Mass. Feb. 25, 2026), where the Court found that the administration's third-country removal policy violates both the INA and the Due Process Clause. *Id*. at 10. Petitioner asks the Court to issue a writ of habeas corpus requiring Petitioner's immediate release from custody and enjoining Respondents from re-detaining him without a pre-deprivation hearing before a neutral arbiter at which the government bears the burden of proving, by clear and convincing evidence,

that there is a material change in circumstances such as to justify his re-detention. *Id.* at 25.

On August 21, 2026, the Court issued Notice of General Order 26-05 and Briefing Schedule. Dkt. 9. On August 26, 2026, the Court ordered Respondents to file a response to Petitioner's motion to proceed under a pseudonym by or before August 28, 2026. Dkt. 11. Per General Order 26-05 and the Briefing Schedule in this case, Respondents' deadline to Respond to the Petition was also August 28, 2026. Dkt. 9. Respondent failed to timely oppose Petitioner's motion to proceed under a pseudonym and the Petition.

On August 29, 2026, the Court ordered Respondents to cause why the Petitioner should not be granted as unopposed by August 31, 2026. Dkt. 12. The Order directed Respondents to either (1) state that they do not oppose the Petitioner or (2) file a response to the Petition in accordance with the procedures set forth in General Order 26-05. *Id.* Respondents did not file any response to the OSC.

The parties have consented to the jurisdiction of the undersigned Magistrate Judge. Dkt. 10.

## II. DISCUSSION

Petitioner John Doe Petitioner argues, *inter alia*, that he is entitled to immediate release from custody because his re-detention without notice or a hearing violates due process. Respondents have not filed an answer or otherwise contested Petitioner's claims.

Respondents' failure to oppose Petitioner's due process claim is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a

concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims").

In light of Respondents' non-opposition, the Court concludes that Petitioner has shown that his detention violates due process. This Court has previously found that noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g., Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-CV-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Based on Respondents' non-opposition and for the reasons stated in those decisions, the Court finds that Petitioner is entitled to release based on his due process claims.

## III. PSEUDONYM MOTION

Petitioner John Doe has also filed a motion for leave to proceed under a pseudonym. Dkt. 2. On August 26, 2026, this Court issued an order requiring

Respondents to respond to Petitioner's pseudonym motion by August 28, 2026. Dkt. 11. Respondents did not timely file a response. Because the Petitioner's request implicates the public's interest in open judicial proceedings, the Court proceeds to evaluate Petitioner's motion on the merits.

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). Nonetheless, the Ninth Circuit has recognized that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). In determining whether to permit a party to proceed anonymously, a district court must balance: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Doe*, 596 F.3d at 1042 (cleaned up).

The Ninth Circuit has indicated that "the two most important factors" are "severity of the threatened harm and the reasonableness of the plaintiffs' fears." *Id.* at 1043. Here, Petitioner seeks anonymity to protect against persecution and retaliation from the Mexican government because of his diagnosed mental health conditions. Petitioner alleges that he was "granted withholding of removal from his home country because he was subject to persecution by national police and mental health care workers, on account of his mental health condition." Dkt. 2. In the Petition, he claims that after he was deported to Mexico in 2011, he was beaten and raped by staff members at a private rehabilitation center in Mexico and that the government was unwilling to prosecute the perpetrators of those acts. Dkt. 5 at 2. He an

asylum application pending before the Immigration Court. Dkt. 5 at 2, n.1.

Based on this record, the Court finds that Petitioner reasonably fears that he may be retaliated against if forced to disclose his identity. This conclusion draws support from other cases in which district courts have permitted asylum seekers to proceed anonymously due to potential retaliation. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096 (E.D. Cal. 2025) (permitting asylum seeker to litigate habeas case under a pseudonym); *V. M. G. v. Jaddou*, No. 24-cv-09314-TLT, 2025 WL 1913574, at *1-2 (N.D. Cal. Feb. 14, 2025) (permitting asylum seeker to litigate mandamus case under a pseudonym). *See also Does I thru XXIII*, 214 F.3d at 1070 (citing approvingly *Doe v. I.N.S.*, 867 F.2d 285, 286 n.1 (6th Cir. 1989), which "allow[ed] asylum petitioner to use pseudonym in order to protect family in China from reprisals").

There are no countervailing interests that are sufficient to overcome Petitioner's interests in proceeding under a pseudonym. It does not appear that Petitioner's public anonymity has or will prejudice Respondents. Petitioner has made Respondents and the Court aware of his true identity. As a result, there is no apparent prejudice to Respondents in permitting Petitioner to continue to proceed under a pseudonym.

Finally, while the public always has an interest in open court proceedings, the decisions in this case are available to the public and Petitioner's true identity is not necessary for the public to understand or evaluate them. *See Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (holding that "the public's interest in the case was not best served by requiring that the litigants reveal their identities, because here, party anonymity did not significantly obstruct the public's view of issues joined or the court's performance in resolving them") (cleaned up).

Accordingly, Petitioner's request to proceed under a pseudonym is GRANTED. Petitioner may continue to refer to himself as John Doe in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered GRANTING the Petition; (2) a writ of habeas corpus be issued requiring John Doe's (A# 092-289-834) immediate release and enjoining Respondents from re-detaining him without first providing notice and a hearing before a neutral arbiter in which the Government must show changed circumstances warranting his detention; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this Order.

Dated: September 1, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE